Louis Cernocky and Clara Cernocky, Plaintiffs-Appellants, v. Indemnity Insurance Company of North America, a Corporation, Defendant-Appellee.

Gen. No. 65–89.

Second District.

April 14, 1966.

Rehearing denied May 13, 1966.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellants.

Baker, McKenzie & Hightower, of Chicago, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an action instituted by Louis and Clara Cernocky against the Indemnity Insurance Company of North America, their public liability insurer, to recover $20,000. This sum represents the excess above the plaintiffs' policy limits which they were compelled to pay to obtain a release of a judgment obtained against them. The plaintiffs' complaint alleged that the defendant insurance company was guilty of bad faith in refusing to enter into settlement negotiations initiated or sought by Theodore and Jeannette Marquardt, claimants in the personal injury suit resulting in the judgment in excess of the policy limits.

The case at bar was tried before a jury. At the close of plaintiffs' evidence, the trial court directed a verdict in favor of the defendant. The plaintiffs appealed and urge that the trial court erred in directing the verdict and in excluding certain testimony.

■■ The test, in determining whether the trial court acted properly in directing the verdict for the defendant at the close of plaintiffs' case, is whether there was a total failure on the part of plaintiffs to prove any essential element of their case. Tucker v. New York, C. & St. L. R. Co., 12 Ill2d 532, 534, 147 NE2d 376 (1958); Lindroth v. Walgreen Co., 407 Ill 121, 130, 94 NE2d 847 (1950). The rather narrow issue before this court is whether, under the evidence, there was a total failure to establish any element of bad faith on the part of the defendant in its failure to achieve a settlement of the earlier lawsuit within the limits of the applicable insurance policy. In resolving this question, we must examine the evidence, together with all reasonable inferences which may be drawn therefrom, in its aspect most favorable to the plaintiffs. Watts v. Bacon & Van Buskirk Glass Co., 18 Ill2d 226, 229, 230, 163 NE2d 425 (1960); Bartolucci v. Falleti, 382 Ill 168, 173, 46 NE2d 980 (1943); Carlson v. New York Life Ins. Co., — Ill App2d —, — NE2d — (2nd Dist 1966).

The facts giving rise to the original suit against the plaintiffs, wherein they were defendants, are detailed in the opinion of this court in the case of Marquardt v. Cernocky, 18 Ill App2d 135, 151 NE2d 109 (2nd Dist 1958). Briefly, the plaintiffs owned a picnic ground and charged admission of those who wished to use it. On July 4, 1955, Jeannette Marquardt, one of the claimants in the original suit, and her family, went to this picnic ground, as did Anthony Orlowski, another defendant in the original suit, and his family. There were several thousand persons there on the day in question.

A part of the picnic ground was rolling and hilly, and a number of cars were parked on a hill. There were no fences, guardrails, logs or other safeguards between where the cars were parked and the lower levels where persons were picnicking. Orlowski had parked his car near the crest of the hill. One of his small daughters

who was noticed playing in the car, apparently took the car out of gear, and it rolled down the hill striking Mrs. Marquardt, pinning her between a picnic bench and a tree. One of her legs was badly crushed and had to be amputated.

At the time of the accident, Mrs. Marquardt was employed, 38 years of age, married and had children. She incurred medical bills of approximately $3,800 and, at the date of the trial, had suffered a loss of wages in the sum of $5,100. Mrs. Marquardt recovered judgment against the plaintiffs here and against Orlowski in the sum of $60,000, and Mr. Marquardt recovered judgment against the same parties in the sum of $5,000. After the judgment, Orlowski was relieved of further liability by paying the Marquardts the sum of $18,000. The limits of plaintiffs' insurance policy was $25,000 for injuries to one person and $50,000 for injuries to more than one person. After an unsuccessful appeal, the defendant insurance company paid out its policy limit of $25,000 to the Marquardts, which, together with the $18,000 previously paid by Orlowski, left a balance of $22,000 due on the judgment. The plaintiffs compromised this sum with the Marquardts for $20,000 and they then instituted this suit against the defendant insurance company for that amount.

Before instituting the original lawsuit, the attorneys for the Marquardts wrote the defendant insurance company and the insurance carrier for Orlowski seeking a conference. The defendant replied that a Mr. Mahoney would contact the attorney. He never did. On November 14, 1955, a copy of a letter addressed to the insurance carrier for Orlowski, was sent to the defendant. It itemized the special damages and again invited a discussion of the case. Again, on December 14, 1955, the Marquardts' attorneys wrote the defendant that they would be in Chicago on December 22 and desired to discuss the case with the defendant and Orlowski's insurance carrier.

A representative of Orlowski's company met with the Marquardts' attorneys, but no representative appeared on behalf of the defendant.

On January 11, 1956, the Marquardts' attorneys again wrote the two insurance companies relative to the damages sustained. This letter concluded with these words: "That $125,000 is a fair figure for all claims which we submit for your consideration." The defendant did not respond and the Marquardts filed their suit in April, 1956 seeking $175,000.

The defendant insurance company retained the Chicago law firm of Vogel and Vogel to answer the complaint on behalf of the plaintiffs, who were defendants therein. The insurance policy contained the usual provisions relative to the insurance company defending any such action and reserving unto itself the right to "make such investigation, negotiation and settlement of any claim or suit as it deems expedient." C. Russell Allen also joined in the answer as the plaintiffs' personal attorney.

■ In the suit at bar, the trial court excluded testimony of Allen relative to a number of conversations he had with Vogel—one of the attorneys for the defendant insurance company—in which he disclosed to Vogel the desire of the Marquardts' attorneys to attempt to settle the suit. This testimony was excluded on the grounds that it was hearsay. The first conversation was in September of 1956, at which time Allen told Vogel that the Marquardts' attorneys had asked him if he would either disclose or obtain authority to disclose the limits of the insurance coverage; and that if the limits were reasonable, the Marquardts would be willing to settle within the limits. Vogel replied that Allen was neither to disclose the policy limits nor to discuss settlement with the Marquardts' attorneys.

In October of 1956, Allen again reported to Vogel that the Marquardts' attorneys had asked him whether the case could be settled, and that they would like to discuss

settlement. Allen stated to Vogel that there was considerable danger of a verdict in excess of the policy coverage, and again sought permission to disclose the policy limits and to enter into settlement discussions.

On January 20, 1957, prior to trial, Vogel wrote to Allen, in part, as follows:

". . . We have temporized in formulating and forwarding to you a proper response on behalf of the insurance company because of the gross lack of understanding on your part of the policy contract and the limits there expressed, the negotiations with reference to settlement in the case and the legal obligation of an insurance company to enter into any character of negotiations looking toward a settlement. . . .

"Next you complain of our failure to disclose the policy limits to the attorneys representing the plaintiffs. Were you familiar with the policy terms and conditions you would fully understand that this complaint is not only unjustifiable from a contractual standpoint but, if you were familiar with the adjudicated cases, has no basis in the law. We, therefore, reject your complaint that we are obligated to disclose the policy limits to anyone, particularly the adverse party.

". . .

"Furthermore, we fail to find in your letter any suggestions supporting your expressions of fear of the outcome of this lawsuit insofar as our mutual clients are concerned, an offer to contribute to a settlement on the basis that you assume. Under the circumstances and in view of your expressed fear of the outcome of a trial we are somewhat surprised to find no such suggestion. You will understand that this statement is not a request for contribution for the reason that the Indemnity Insurance Company

202

of North America will recognize its policy obligation to its limits. The comment is made solely because of your unsupported statement that this matter is of grave importance and is likely to result in damage to your clients. Until and unless the negotiations for settlement of this case reach a point where there is a question of the disposition of the same within the policy limits of our fund we have no comment in the matter.

"Many of the matters and things stated in your letter indicate a source of information available to you and not available to us. We wish to call your attention to the cooperation clause of your clients' policy and to the adjudicated cases in this and other jurisdictions regarding failure to cooperate. It would be most unfortunate if it should develop that your clients or their personal attorney were not fully cooperating with your clients' insurance company, but were, on the contrary, collaborating with the attorneys for the plaintiffs in the pending suit. It is not suggested that there is evidence to that effect at this time but we call it to your attention in order that such a situation may be avoided. . . ."

During the course of the trial, Allen was again approached by the Marquardts' attorneys and he told Vogel that they had asked whether the case could be settled and whether he (Vogel) would be willing to sit down and discuss it. Allen further stated to Vogel that the evidence was damaging; that in his opinion a large verdict would be returned; and he suggested that a conference be held to see if a settlement could be obtained. Vogel replied that he was there to try a lawsuit, not to settle a case, and that he was running the case.

This testimony was relevant and competent. It was not offered to prove that the Marquardts' attorneys made the statements purportedly repeated by Allen to the

defendant's agent, but for the purpose of showing that Allen made such representations to him. The truth of such statements was not at issue, but rather the fact that such statements were made to defendant's agent. The significance of this testimony was that the defendant when advised of these facts, whether true or not, conducted itself, through its agent, in a particular manner. It was this conduct, in light of the statements made to its agent, which was important in determining the issue of "good faith" on the part of the defendant. It was error to exclude this testimony. The People v. Carpenter, 28 Ill 2d 116, 120, 121, 190 NE2d 738 (1963); People v. Smith, 63 Ill App2d 369, 379, 211 NE2d 456 (2nd Dist 1965); Cleary, Handbook of Illinois Evidence, 2d Ed, sec 17.1 et seq., pp 273-276.

The plaintiffs charge that the defendant was guilty of bad faith in refusing under the particular facts of this case, to enter into settlement negotiations sought by the Marquardts' attorneys. In passing upon the correctness of the trial court's decision on the motion for directed verdict, we must determine what may constitute the "bad faith" charged by plaintiffs here.

■ It is beyond question that an insurance company, although it acts under a policy which contains limits as to its liability, may so conduct itself as to be liable for the entire judgment recovered against its insured irrespective of its policy limits. General Cas. Co. of Wisconsin v. Whipple, 328 F2d 353, 355 (CA 7th, 1964).

While the various jurisdictions differ as to the conduct which may subject an insurance carrier to liability for the excess of a judgment over its policy limits, in this jurisdiction conduct constituting fraud, negligence or bad faith may render the insurer so liable. Olympia Fields Country Club v. Bankers Indemnity Ins. Co., 325 Ill App 649, 673, 60 NE2d 896 (1st Dist 1945); Ballard v. Citizens Cas. Co. of New York, 196 F2d 96, 102 (CA 7th, 1952).

■ Some courts have held that in cases of this nature the "bad faith" which an insured must show is for all intents and purposes equivalent to fraud. City of Wakefield v. Globe Indemnity Co., 246 Mich 645, 225 NW 643 (1929); Johnson v. Hardware Mut. Cas. Co., 108 Vt 269, 187 A 788, 796 (1936). We cannot accept such an interpretation, and agree with the United States Court of Appeals for the Seventh Circuit, which in analyzing the Olympia Fields case stated that negligence or bad faith is the Illinois standard of conduct to be applied to the facts in determining whether the insurer is liable beyond the policy limits for failing to settle the case. The "fraud" standard is not required. We believe the better view to be that expressed by the Wisconsin Court in Hilker v. Western Automobile Ins. Co., 204 Wis 1, 235 NW 413, 414, and quoted by the Court in the Olympia Fields case at page 669, to-wit:

> ". . . Terms which are not strictly convertible or synonymous have been used by different courts to indicate the same thing. Negligence has been used by some courts to mean the same thing that other courts have designated as bad faith. Bad faith, especially, is a term of variable significance and rather broad application. Generally speaking, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto. In order to understand what is meant by bad faith, a comprehension of one's duty is generally necessary, and we have concluded that we can best indicate the circumstance under which the insurer may become liable to the insured by failure to settle by giving with some particularity our conception of the duty which the written contract of insurance imposes upon the carrier."

We agree that the words "good faith" and "bad faith" are not particular words of art as used here. They mean

either being faithful or unfaithful to the duty or obligation that is owed.

 The insurance contract in question does not itself expressly impose any duty upon the insurer, a breach of which makes it liable to the insured for failure to compromise the claim.. The contract leaves unto the insurer complete discretion with regard to the conduct of the defense of any action brought against the insured, including the matter of negotiation and settlement. It is this relationship and right which creates the duty to the insured. So long as the recovery sought in an action may not exceed the policy limits, the insurer need not consider the interests of the insured in conducting the defense. When, however, an action arises in which the recovery may exceed the policy limits of the insured's protection, the interests of the insured must also be of concern to the insurer in the conduct of the litigation. It is at this point that the duty arises on the part of the insurer to the insured. Olympia Fields Club v. Bankers Indemnity Ins. Co., supra, at 670.

The extent of the duty—that is the amount of consideration that must be given by the insurer to the insured's interests—is differently defined by various jurisdictions. There is some authority—primarily in earlier cases—that the insurer may give paramount consideration to its own interests. Some jurisdictions hold that the insurer must give "some" consideration to the insured's interests. Apparently, it is most frequently held that the insurer must give equal thought to the insured's interest; and in some cases it is even held that the insurer must give paramount consideration to the insured's interest. 7 Am Jur2d, Automobile Insurance, section 156, pp 484–487.

In Olympia Fields, supra, the court, at page 662, in quoting from American Mut. Liability Ins. Co. v. Cooper, 61 F2d 446, stated:

"In our opinion the insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured. The insurer, as it had a right to do under the policy, assumed exclusive control of the claim against the insured, and took unto itself the power to determine for the insured all questions of liability, settlement, of defense and management before and during trial, and of appeal after final judgment. We are of opinion that this relationship imposes upon the insurer the duty, not under the terms of the contract strictly speaking, but because of and flowing from it, to act honestly and in good faith toward the insured. It was open to the jury to find that the insurer did not perform this duty."

By the nature of the insurance transaction, the insured must barter to the insurer the right to conduct the defense of litigation and of settlement negotiations. This is essential to the risk the insurer assumes. By virtue of this, however, there is imposed upon the insurer the duty to give to the insured's interests consideration, at least *equal* to that of its own. General Cas. Co. of Wisconsin v. Whipple, supra, 355, 356.

■■■ This duty is well summarized in Ballard, supra, at 102:

"We hold it to be the law of Illinois that in investigating, defending, considering questions of settlement, and on the question of appeal, the insurance company must give the interests of the insured equal consideration with its own interests and it must in all respects deal fairly with the insured. The applicable rule is well stated in American Fidelity & Casualty Co., Inc. v. G. A. Nichols Co., 10 Cir, 173 F2d 830, 832: 'When a liability insurance company by the terms of its policy obtains from the insured

a power, irrevocable during the continuance of its liability under the policy, to determine whether an offer of compromise of a claim shall be accepted or rejected, it creates a fiduciary relationship between it and the insured with the resulting duties that grow out of such a relationship. Under policies like those here involved, the insurer and the insured owe to each other the duty to exercise the utmost good faith. While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to do it acts in bad faith.' "

■ Tested by these standards, we believe that there was sufficient evidence to overcome defendant's motion for a directed verdict at the close of plaintiffs' case. Concerning the question of settlement, there were numerous apparent attempts on the part of the Marquardts' attorneys and on the part of plaintiffs' attorneys to see if a settlement could be achieved within the insurance policy limits. The defendant summarily and emphatically refused to discuss settlement; to inform the Marquardts of the policy limits so that they could determine if they could make an offer of settlement within the limits; or to permit plaintiffs' personal counsel to do so. Such conduct indicated that the defendant did not give equal consideration to the insured's interest. Therefore, it was error for the trial Court to direct a verdict for the defendant at the close of plaintiffs' case.

This case differs in one material respect from the traditional cases such as Olympia and Ballard, supra, in that in the case at bar, there was no offer by the Marquardts' attorneys, before or during the trial, to settle the case within the policy limits. However, under this factual situation, we do not believe that such circumstance is fatal to plaintiffs' case. The evidence, which

208

was erroneously excluded, indicated the fervent desire and frequent attempts of the Marquardts' attorneys to try to settle the case, and that the attorney and agent of the defendant insurance company was so informed. The Marquardts' attorneys importuned the defendant, but to no avail, to advise them of the policy limits so that an attempt could be made by them, to achieve a settlement within these limits. They made these overtures through Allen, the plaintiffs' personal attorney, with whom they apparently felt they could better communicate. They were denied an opportunity to decide whether they would settle within the policy limits and their invitation to negotiate was refused.

Our courts have since recognized the relevancy of being informed of the policy limits in evaluating a case and its aid in achieving settlements. People ex rel. Terry v. Fisher, 12 Ill2d 231, 238–240, 145 NE2d 548 (1957). The fact that no offer was made by Marquardts to settle within the policy limits is merely one factor to be considered in light of the surrounding circumstances in determining whether the defendant was guilty of bad faith.

The defendant argues that Whipple, supra, held that under the law of Illinois, the insurance company had no affirmative duty to attempt to settle the case within the policy limits. The court did not so hold. It stated at page 357:

> "We hold that *under the facts of this case,* no reasonable person, after equal consideration of the interests of the insurer and the insured, would decide that the insurer had an affirmative duty to attempt to settle the case within the policy limits." (Emphasis ours.)

The court there held that *under the particular facts before it,* the insurance company, as a matter of law, had no affirmative duty to attempt to settle the case in order to fulfill its duty of exercising good faith to its insured's

interests. Among the facts there considered were these: the policy limits were $50,000; the lowest settlement offer received from the claimants was approximately $190,-000; just prior to trial, the claimants' attorneys informed defendant that they would not settle within the policy limits; and there was no refusal to disclose the policy limits. In Whipple, there was no condition created by the taciturnity of the insurer itself rendering it impossible for the insured to determine whether a settlement could be achieved within the policy limits.

We acknowledge that in Moore v. Columbia Cas. Co., 174 F Supp 566 (SD Ill 1959), cited by defendant, the court stated at page 572 that, *"Where there is no opportunity to settle within the policy limits,* I fail to see how the insurance company could be guilty of lack of bad (sic) faith, fraud, or negligence in failing to settle within the policy limits." (Emphasis ours), but we point out that the case is factually inapposite. In Moore, the plaintiff-insured at all times insisted that the accident did not occur; the defendant-insurer did not refuse to disclose policy limits or to discuss settlement; and the insurance company in fact made an offer of settlement within the policy limits, which was not accepted, and no counteroffer followed. The policy limits were $10,000, and there was evidence that the claimant was neither willing nor had she authorized her attorneys to accept less than $25,000 to $30,000 in settlement.

In Cotton States Mut. Ins. Co. v. Fields, 106 Ga App 740, 128 SE2d 358 (1962), also cited by defendant, the court held that the complaint failed to state a cause of action where it merely alleged that the defendant failed to solicit or make an offer of settlement although requested to do so. The court there stated that no facts were alleged showing that the defendant could have effected a settlement if it had attempted to do so; and that the supposition that if the defendant had made an offer of settlement then possibly the suit could have been

210

settled within the policy limits, was too conjectural and speculative to afford a basis for recovery. The pertinent facts in Cotton States readily distinguish it from the case at bar where the defendant refused to accept an invitation to negotiate, and where it declined to disclose the limits of its coverage.

For the reasons set forth herein this cause is reversed and remanded for a new trial consistent with the views expressed herein.

Reversed and remanded with directions.

MORAN, P. J. and ABRAHAMSON, J., concur.