ELLA HADDICK, Special Adm'r of the Estate of James Griffith, Plaintiff-Appellant, v. VALOR INSURANCE COMPANY, Defendant-Appellee.

Third District   No. 3—00—0027

Opinion filed August 14, 2000.

William K. Brown (argued), of Goldfine & Bowles, P.C., of Peoria, for appellant.

James P. Newman (argued), of Newman & Pelafas, of Chicago, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiff Ella Haddick, administrator of the estate of her son, James Griffith, filed this suit against defendant Valor Insurance Company (Valor), alleging that Valor acted in bad faith when it refused to settle a claim against its policyholder within the policy limits. The trial court granted Valor's motion to dismiss, finding that Valor had no duty to settle prior to the filing of a lawsuit against its policyholder.

We reverse and hold that an insurance company has a duty to act in good faith in settling a claim against its policyholder in a timely manner both before and after suit is filed. We further hold that a plaintiff may maintain a cause of action against an insurance company for failure to settle a claim in good faith though the plaintiff withdrew her offer to settle within the policy limits before filing suit.

## FACTS

On May 6, 1996, Griffith was killed in a single-car accident when the vehicle in which he was traveling left the road. Both of the occupants of the car, Griffith and Larry Woodley, Jr., had been thrown from the car. The two men were taken to a hospital, where Griffith died. Griffith incurred medical bills in excess of $80,000.

The vehicle was owned by Woodley. A police report from the accident included an accident reconstruction report indicating that Woodley was driving. At the hospital, the police officer asked an emergency room doctor to question Woodley about who was driving. Woodley responded to the doctor's question that he was. Woodley was then arrested for driving under the influence. Approximately a week later, Woodley claimed that he could not remember who was driving.

On August 22, 1996, after a demand for settlement was made by Haddick's attorney on behalf of Griffith's estate, Valor responded by

letter indicating that it would discuss settlement after receiving a copy of the police report. Haddick sent a copy of the report to Valor but heard nothing from Valor for seven months. Thereupon Haddick sent a letter to Valor on March 7, 1997, demanding that it settle for the policy limits of $20,000. The letter outlined Haddick's claim, discussed the probability that Woodley was driving the vehicle, and requested that settlement be made within 14 days. Valor responded that it was still investigating the claim to determine who was driving. At the end of the 14 days, Haddick extended the deadline for settlement for another two weeks after learning that a new claims adjustor had taken over the case.

After Valor did not respond, Haddick sent a letter indicating that suit would be filed and she would no longer accept settlement for the policy limits. Approximately one year later, Valor offered the policy limits of $20,000 but that offer was rejected. The case went to trial and a verdict was returned in favor of Haddick for $150,924.80.

Following the entry of judgment against him, Woodley assigned to Haddick all of his causes of action against Valor. Haddick then filed this action against Valor claiming that it should be liable for the whole judgment because it acted in bad faith in refusing to settle within the policy limits. The trial court granted Valor's motion to dismiss pursuant to section 2—615(b) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—615(b) (West 1998)), and Haddick appeals.

## ANALYSIS

On appeal, we must determine whether the trial court erred when it dismissed Haddick's complaint pursuant to section 2—615(b) of the Code (735 ILCS 5/2—615(b) (West 1998)).

A motion to dismiss pursuant to section 2—615 admits all well-pled facts in the plaintiff's complaint. *Jackson v. Michael Reese Hospital & Medical Center*, 294 Ill. App. 3d 1, 689 N.E.2d 205 (1997). Considering such well-pled facts as true, an involuntary dismissal on the pleadings is proper if it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. *Grassini v. Du Page Township*, 279 Ill. App. 3d 614, 665 N.E.2d 860 (1996). On appeal, this court reviews the trial court's decision to dismiss a claim *de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732 (1993).

The trial court dismissed Haddick's complaint, finding both that Valor had no duty under Illinois law to settle Haddick's claim prior to suit being filed and that Haddick could not maintain a "bad faith" claim after she withdrew her policy limit demand. Haddick disputes both of these findings.

■ An insurer has a duty to act in good faith in responding to settlement offers arising from the insurer's exclusive control over settlement negotiations. See *Krutsinger v. Illinois Casualty Co.*, 10 Ill. 2d 518, 141 N.E.2d 16 (1957). While the insurer may have an incentive to refuse settlement and proceed to trial, the policyholder may prefer to settle within the policy limits to avoid the risk of trial, thus avoiding a verdict in excess of the policy limits for which the policyholder will theoretically be personally liable. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 675 N.E.2d 897 (1996).

■ The duty to settle is implied in law to protect the policyholder from exposure to liability in excess of coverage as a result of the insurer's gamble on which only the policyholder may lose. 14 Couch on Insurance 3d § 203:13, at 203-22 (1999). When an insurer breaches that duty by refusing to settle, the insurer may be liable for the full amount of a judgment against the policyholder, regardless of the policy limits. *Cramer*, 174 Ill. 2d at 526, 675 N.E.2d at 903.

In *Krutsinger*, the court stated that an insurer that undertakes the defense of a suit against the insured, where the damages sought are in excess of the policy limits, cannot arbitrarily refuse a settlement within policy limits. *Krutsinger*, 10 Ill. 2d at 527, 141 N.E.2d at 21. Similarly, in *Cramer*, the court stated that the duty to settle arises because the policyholder has relinquished defense of suit to the insurer. *Cramer*, 174 Ill. 2d at 525, 675 N.E.2d at 903. Valor seizes upon the "defense of suit" language in both cases to argue that Illinois law imposes no duty upon the insurer to settle in good faith prior to suit being filed.

Neither *Krutsinger* nor *Cramer* involved a factual situation similar to that before us, however, where the plaintiff sought to settle within the policy limits prior to filing suit. Thus, neither court discussed whether a duty exists between the insurer and the policyholder prior to the filing of a suit by a third party. Indeed, this issue appears to be one of first impression in Illinois.

Haddick cites *Cernocky v. Indemnity Insurance Co. of North America*, 69 Ill. App. 2d 196, 216 N.E.2d 198 (1966), which, while somewhat factually different from the case before us, is more on point than *Krutsinger* and *Cramer*. In that case, the plaintiffs were injured in a car accident with the defendants. The plaintiffs' attorney attempted to commence negotiations with the defendants' insurer both prior to filing suit and after filing suit. The insurer refused to participate in settlement negotiations and refused to disclose the policy limits. After a judgment was entered in favor of the plaintiffs for a sum in excess of the policy limits, the defendants sued their insurer for the difference. The trial court directed a verdict for the insurer and the appellate court reversed.

On review, the *Cernocky* court held that an insurer will be liable beyond the policy limits for failing to settle a case where there is evidence of negligence or bad faith. *Cernocky*, 69 Ill. App. 2d at 205, 216 N.E.2d at 203. The court quoted the following language from *Ballard v. Citizens Casualty Co.*, 196 F.2d 96 (7th Cir. 1952), in discussing the duty that an insurer owes its policyholder to settle in good faith:

> "When a liability insurance company by the terms of its policy obtains from the insured a power, irrevocable during the continuance of its liability under the policy, to determine whether an offer of compromise of a claim shall be accepted or rejected, it creates a fiduciary relationship between it and the insured with the resulting duties that grow out of such relationship." *Cernocky*, 69 Ill. App. 2d at 207-08, 216 N.E.2d at 204.

This language indicates that a duty to the policyholder is created not upon the instigation of suit by a third party but upon the conception of the insurance contract. Though *Cernocky* is somewhat different from the case at bar in that the defendants' attorney attempted to engage in negotiations both before and after filing suit, the basis for the court's holding, that a fiduciary duty is created by virtue of the insurance contract, is still applicable here.

Because the scope of an insured's duty to its policyholder prior to the filing of suit by a third party has never been determined in Illinois before now, a review of case law from other jurisdictions is helpful in resolving this issue. Some jurisdictions have found that an insurer has a duty to settle in good faith prior to the filing of suit. See *Smith v. Blackwell*, 14 Kan. App. 2d 158, 791 P.2d 1343 (1989) (additionally, insurer cannot cure a breach of this duty by offering the policy limits after suit is filed); see also *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163 (1982) (because policyholder is prohibited from defending himself both before and after suit is filed, insurer owes a duty to act in good faith); *Openshaw v. Allstate Insurance Co.*, 94 Idaho 192, 484 P.2d 1032 (1971) (suggested without deciding that insurers have a duty to settle a claim before suit is filed when injured third party initiates settlement negotiations). Some courts and commentators have gone even further to suggest that the insurer has an affirmative duty to initiate settlement if liability is clear and the injured person's damages exceed the policy limits. See, *e.g.*, *Alt v. American Family Mutual Insurance Co.*, 71 Wis. 2d 340, 237 N.W.2d 706 (1976); R. Keeton & A. Widiss, Insurance Law § 7.8(c), at 889-90 (1988). These courts primarily agree that the duty to settle arises from the insurer's fiduciary duties owed to the policyholder emanating from the fact that the policyholder may not act on his own behalf in settling the claim without risking loss of benefits.

Other jurisdictions have found no duty to investigate or settle a claim before suit is filed. See *Morrell Construction, Inc. v. Home Insurance Co.*, 920 F.2d 576 (9th Cir. 1990); *Ramsey v. Interstate Insurors, Inc.*, 89 N.C. App. 98, 365 S.E.2d 172 (1988). These decisions are generally based upon the lack of language indicating the existence of a duty in the insurance policy.

■ We decline to view this issue through such narrow lenses as the latter courts have used. Whether a third party has filed suit and then attempts to negotiate settlement or is attempting to negotiate settlement under the threat of litigation, the policyholder is without authority to negotiate on his own behalf. The policyholder relinquished that right when he entered into an insurance contract with the insurer, paying the insurer periodic premiums in exchange for the insurer's promise to defend and indemnify him in the event of a car accident from which claim is made or suit is brought. Thus, the same threat exists to the policyholder that the insurer will wrongly refuse to settle within the policy limits and a judgment will be entered against him in . excess of the policy whether the third party attempted to negotiate a settlement prior to or after filing suit.

Moreover, many insurance contracts specifically provide for a duty on the part of the insurer to investigate reported accidents and negotiate settlements both before and after a suit is filed. See, *e.g.*, *Olympia Fields Country Club v. Bankers Indemnity Insurance Co.*, 325 Ill. App. 649, 60 N.E.2d 896 (1945) (policy provided that insurer would investigate reported accidents at its own cost and undertake negotiations for settlement and, in the event suit was brought, defend the policyholder in the suit). Here, the liability portion of Woodley's insurance contract provides that it applies to each policyholder *against whom claim is made* or suit is brought. The policy further requires that a policyholder immediately forward to Valor any demand, notice, summons or other process received by him pursuant to a *claim* or suit. If this court were to affirm the trial court's blanket rule that no insurer owes its policyholder a duty prior to suit being filed, such a ruling could retroactively limit the duties of an insurer to a policyholder, which duties were bargained for in the insurance contract. Accordingly, we reverse the trial court's decision and instead hold that an insurer owes its policyholder a duty to settle in good faith even prior to suit being filed by a third party.

We turn now to the issue of whether a plaintiff can maintain a cause of action against an insurance company for failure to settle a claim within the policy limits after withdrawing her policy demand.

The trial court found that Haddick could not maintain her bad faith claim against Valor after she withdrew her offer to settle within

the policy limits. Haddick contends that this is not the law in Illinois, citing *Mid-America Bank & Trust Co. v. Commercial Union Insurance Co.*, 224 Ill. App. 3d 1083, 587 N.E.2d 81 (1992). In *Mid-America*, a 13-year-old boy suffered brain damage after being hit by a truck. The plaintiff attempted to settle with the truck driver's insurance company for the policy limits of $50,000 but the offer was not accepted. Almost three years later, the plaintiff again offered to settle for $50,000. The insurer offered $30,000 on a "take it or leave it" basis and the plaintiff withdrew the offer. Just six days later, the insurer offered to settle for $50,000 but the plaintiff refused and the case was tried. The jury awarded the plaintiff almost $1 million in damages. The plaintiff then sued the insurer for bad faith in settling the original claim.

The appellate court affirmed the trial court's denial of a directed verdict in favor of the insurer. On appeal, the insurer argued that the plaintiff had failed to prove a cause of action because it refused the insurer's offer to settle for $50,000 just six days after the plaintiff had made an offer to settle for that amount. The court found that argument unpersuasive because it ignored the three years in which the offer was kept open and ignored the $30,000 "take it or leave it" offer, which was the essence of the plaintiff's "bad faith" claim. *Mid-America*, 224 Ill. App. 3d at 1087, 587 N.E.2d at 84.

Valor cites *Brocato v. Prairie State Farmers Insurance Ass'n*, 166 Ill. App. 3d 986, 520 N.E.2d 1200 (1988), for the proposition that a plaintiff may not maintain a "bad faith" claim if she refuses to settle within the policy limits. In *Brocato*, the plaintiff never made, and thus could not later revoke, an offer to settle within the policy limits. Rather, in *Brocato*, it was the insurer that attempted to settle with the plaintiff for the policy limits and the plaintiff flatly refused.

■ In this case, Valor had knowledge that Griffith, a young man at the time, was killed in a car accident with its policyholder on May 6, 1991. It knew that Griffith's medical bills were in excess of $80,000. An accident reconstruction report indicated that its policyholder, Woodley, was driving the vehicle. Woodley responded to an emergency room doctor's question in front of the officer writing the report that he was the driver of the vehicle. Though Woodley later stated that he could not remember who was driving, he did not at that time indicate a belief that Griffith was driving. Accordingly, Valor had knowledge that its insured's liability could far exceed the policy limits of $20,000.

A letter from Valor to Haddick's attorney dated August 22, 1996, acknowledged receipt of a demand for settlement and indicated that settlement options would be discussed after receipt of a police report. Haddick's attorney forwarded that report. After not hearing from Valor for seven months, Haddick made a demand that Valor pay the

policy limits of $20,000 within 14 days. Valor refused, contending that it was still investigating the accident. Haddick then extended the time for accepting the offer another 14 days. When Valor did not respond, Haddick filed suit. Approximately one year later, Valor offered the policy limits. Haddick refused, claiming that she had undergone time and expense in preparing the case for trial.

*Mid-America* would suggest that Haddick is not precluded from asserting a cause of action for bad faith simply because she revoked the offer to settle within the policy limits before filing suit. Valor contends that *Mid-America* is factually distinguishable from the instant case because the offer in that case was left open for three years while the offer in this case was withdrawn after only one month. A letter in the record from Valor to Haddick's attorney, however, indicates that as early as August of the preceding year a demand for settlement was made. Valor was aware of the offer, the fact that Griffith was killed, the possible personal liability of Woodley, and the risk of excess liability if the case were tried. Valor had some eight months to settle within the policy limits before Haddick withdrew her offer.

But, the question of whether an insurer exercised bad faith in refusing to settle for the policy limits is a question for the finder of fact. See *Olympia Fields*, 325 Ill. App. 3d at 665, 60 N.E.2d at 903 ("'[w]here there is any evidence whatever of bad faith [by an insurer], the issue is for the jury'"), quoting *City of Wakefield v. Globe Indemnity Co.*, 246 Mich. 645, 655, 225 N.W. 643, 646 (1929). Thus, we make no decision here whether Valor breached its duty of good faith when it refused to settle within Haddick's self-imposed deadline. Instead, we reverse the trial court's decision and remand this cause to the trial court, holding that a plaintiff can maintain a cause of action for bad faith even though the plaintiff revokes an offer to settle.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is reversed and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

HOMER and LYTTON, JJ., concur.