(No. 90226.—

ELLA HADDICK, Special Adm'r of the Estate of
James Griffith, Appellee, v. VALOR INSURANCE,
Appellant.

*Opinion filed November 21, 2001.—Rehearing denied
February 4, 2002.*

410

James P. Newman and James P. Pelafas, of Newman & Pelafas, of Chicago, for appellant.

Goldfine & Bowles, P.C., of Peoria (William K. Brown, of counsel), for appellee.

Richard L. Rumsey, Ltd., of Chicago (Barry G. Doyle,

of counsel), for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE GARMAN delivered the opinion of the court:

The issue in this case is at what point in time does an insurance provider's duty to settle arise. Plaintiff, Ella Haddick, as the special administrator of the estate of James Griffith, filed a single-count complaint against defendant, Valor Insurance, alleging that defendant acted in bad faith by failing to settle a claim against its policyholder within the policy limits. The trial court granted defendant's section 2—615 motion to dismiss the complaint and the appellate court reversed. We consider all well-pleaded facts contained in the allegations of the complaint and the exhibits attached thereto.

## BACKGROUND

On May 6, 1996, James Griffith and Larry Woodley, Jr., were involved in a single-car accident, which resulted in Griffith's death. According to the police report, Woodley owned the vehicle and was driving the vehicle at the time of the accident. Shortly after the accident, the men were transported to separate hospitals. The reporting officer attempted to speak with Woodley at the hospital, but he was unresponsive. At the request of the officer, an emergency room doctor woke Woodley to ask who was driving the vehicle. Woodley responded that he was driving. After detecting an odor of alcohol, the officer issued Woodley a ticket for driving under the influence. On May 13, 1996, Woodley informed the same officer that he did not remember the accident and did not know who had been driving the vehicle.

Woodley had liability coverage through defendant of $20,000 per person. On August 13, 1996, the attorney for the decedent's estate wrote defendant, informing the insurer that the decedent had incurred medical bills

totaling $82,544.80 as a result of the accident. After the attorney made a demand for settlement, defendant responded by letter dated August 22, 1996, that it would discuss settlement after it received a copy of the police report. On November 1, 1996, defendant wrote to the attorney acknowledging receipt of the police report and indicating that an investigation was still pending to ascertain the actual driver of the vehicle. According to defendant, Woodley was still unable to recall the accident; therefore, upon completion of the police investigation, defendant would determine its position and a possible resolution of the claim.

On March 7, 1997, plaintiff, decedent's mother, was named as the special administrator of his estate. By letter of the same date, she presented to defendant her claim against Woodley for wrongful death. Plaintiff demanded that defendant settle the claim for the policy limits within 14 days of receipt of the letter, otherwise she would "no longer settle [the] claim within the policy limits." Defendant responded that the settlement demand was premature and that it was still investigating to determine who was driving the vehicle. Plaintiff subsequently extended the settlement deadline to April 7, 1997. When defendant did not offer to settle by the requested date, plaintiff informed defendant by letter dated April 9, 1997, that she had filed a wrongful death suit and had "no intention of settling the case at this time."

Approximately one year later, defendant offered to settle the case for the policy limits. Plaintiff refused this offer. The trial court entered summary judgment in plaintiff's favor on the issue of liability and, after trial, entered a judgment in the amount of $150,924.80.

Following the judgment, Woodley assigned all claims against his insurer to plaintiff, who then filed the present action. Plaintiff alleged that defendant acted in bad

faith by failing to settle her claim against Woodley within the policy limits. Pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)), the trial court dismissed the complaint, finding that defendant had no duty under Illinois law to settle the claim prior to suit being filed and that plaintiff could not maintain a bad-faith claim once she withdrew her policy demand.

On review, the appellate court reversed. Citing *Cernocky v. Indemnity Insurance Co. of North America*, 69 Ill. App. 2d 196, 207-08 (1966), the court concluded that the duty to settle is created by the "conception of the insurance contract" (315 Ill. App. 3d 752, 756) because the policyholder relinquishes his right to negotiate settlement on his own behalf when he enters into the contract. "Thus, the same threat exists to the policyholder that the insurer will wrongly refuse to settle within the policy limits and a judgment will be entered against him in excess of the policy whether the third party attempted to negotiate a settlement prior to or after filing suit." 315 Ill. App. 3d at 757. Further, noting that many insurance contracts specifically provide for a duty to settle both before and after a suit is filed, the court opined that if it affirmed the trial court's blanket holding, "such a ruling could retroactively limit the duties of an insurer to a policyholder, which were bargained for in the insurance contract." 315 Ill. App. 3d at 757. Finally, the court held that plaintiff could maintain her cause of action for bad faith even though she revoked her offer to settle within the policy limits. 315 Ill. App. 3d at 759.

We granted defendant's petition for leave to appeal (177 Ill. 2d R. 315(a)) and allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiff (155 Ill. 2d R. 345).

## ANALYSIS

A section 2—615 motion to dismiss challenges the

legal sufficiency of a complaint. Upon review, all well-pleaded facts in the complaint are taken as true. Facts apparent from the face of the pleadings, including the exhibits attached thereto, may be considered. *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 491-92 (1999). The reviewing court determines whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief can be granted. A cause of action will not be dismissed unless it is clear that the plaintiff cannot prove any set of facts entitling her to relief. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). We review a dismissal pursuant to section 2—615 *de novo. Neade v. Portes*, 193 Ill. 2d 433, 439 (2000).

This court has recognized that an insurance provider has a duty to act in good faith in responding to settlement offers. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 526 (1996), citing *Krutsinger v. Illinois Casualty Co.*, 10 Ill. 2d 518, 527 (1957). If the insurer breaches this duty, it may be liable for the entire judgment against its insured, including any amount in excess of policy limits. *Cramer*, 174 Ill. 2d at 526; *Mid-America Bank & Trust Co. v. Commercial Union Insurance Co.*, 224 Ill. App. 3d 1083, 1087 (1992); 14 Couch on Insurance § 203:12 (3d rev. ed. 1999).

An insurer derives the authority to engage in settlement negotiations from the language of the insurance contract. Generally, such language gives the insurer the right to "make such investigation, negotiation, and settlement of any claim or suit as it deems expedient." 14 Couch § 203:7. Therefore, the basis for the duty to settle is the insurer's exclusive control over settlement negotiations and defense of litigation. See *Cernocky*, 69 Ill. App. 2d at 207; see also *Cramer*, 174 Ill. 2d at 526

(policyholder relinquishes defense of suit); 14 Couch § 203:13 (insurer controls settlement negotiations). This exclusive control, however, necessarily results in a conflict of interest between the insurance provider and its insured. We explained in *Cramer* that:

> "In the typical 'duty to settle' case, the third party has sued the policyholder for an amount in excess of the policy limits but has offered to settle the claim against the policyholder for an amount equal to or less than those policy limits.
>
> In this circumstance, the insurer may have an incentive to decline the settlement offer and proceed to trial. The insurer may believe that it can win a verdict in its favor. In contrast, the policyholder may prefer to settle within the policy limits and avoid the risk of trial. The insurer may ignore the policyholder's interest and decline to settle." *Cramer*, 174 Ill. 2d at 525-26.

In such cases, the insurance contract itself does not provide a remedy to the insured faced with a judgment in excess of policy limits; therefore, the law imposes upon the insurer the duty to settle in good faith. See *Cramer*, 174 Ill. 2d at 526.

Defendant relies upon language from *Cramer*, including the statement that "[t]he 'duty to settle' arises because the policyholder has relinquished defense of the suit to the insurer" (*Cramer*, 174 Ill. 2d at 526), to argue that the duty to settle derives from the duty to defend and, thus, does not arise until a lawsuit is filed. Defendant also cites *Krutsinger*, 10 Ill. 2d at 527, in which we noted that an insurer who undertakes defense of a suit against the policyholder, where the damages sought are in excess of policy limits, cannot arbitrarily refuse a settlement offer within the policy limits. Defendant's argument is unpersuasive. In *Cramer*, this court considered whether a plaintiff could pursue a common law fraud action against his insurer arising from the purported cancellation of his insurance policy. *Krutsinger* involved a suit against an insurance company for failure

to satisfy judgments against its insured. Neither case stands for the proposition that the duty to settle arises only after the filing of a lawsuit.

Plaintiff, on the other hand, argues that the duty to settle arises from the "conception of the insurance contract," *i.e.*, from the time the insurer and its insured enter into the policy. We also reject this argument.

When damages sought by a third party against the insured do not exceed policy limits, " 'the question of whether the claim be compromised or settled, or the manner in which it shall be defended, is a matter of no concern to the insured.' " *Olympia Fields Country Club v. Bankers Indemnity Insurance Co.*, 325 Ill. App. 649, 670-71 (1945), quoting *Hilker v. Western Automobile Insurance Co.*, 204 Wis. 1, 14, 235 N.W. 413, 414 (1931). In such an instance, the insured is not at risk for personal liability. However, the insured becomes concerned with personal liability once a claim arises in which there is a reasonable probability that the insured will be found liable for an excess judgment. In this instance, the insurer must take the insured's settlement interests into consideration. See *Cernocky*, 69 Ill. App. 2d at 206; *Casualty Insurance Co. v. Town & Country Pre-School Nursery, Inc.*, 147 Ill. App. 3d 567, 569 (1986); *Adduci v. Vigilant Insurance Co.*, 98 Ill. App. 3d 472, 475 (1981); *Olympia Fields*, 325 Ill. App. at 670, quoting *Hilker*, 204 Wis. at 13-14, 235 N.W. at 414.

For example, in *Adduci*, the First District of the appellate court addressed whether the plaintiffs, assignees of the insured, alleged sufficient facts in their amended complaint to state a cause of action against an insurer for bad faith refusal to settle. The court noted that to state a cause of action for bad faith, the plaintiffs must allege that the duty to settle arose; the insurer breached the duty; and the breach caused injury to the insured. With respect to duty, the court found that the complaint

alleged sufficient facts to establish the existence of the insurer's duty in that it alleged that the insurer was aware of the almost certain liability of the insured and that recovery in excess of policy limits was likely. *Adduci*, 98 Ill. App. 3d at 476. Although the court in *Adduci* was not faced with the question we address in the case at bar, we find *Adduci* helpful to our analysis.

To survive a motion to dismiss a bad-faith claim, the plaintiff must allege facts sufficient to establish the existence of the duty to settle in good faith. The duty does not arise at the time the parties enter into the insurance contract, nor does it depend on whether or not a lawsuit has been filed. The duty of an insurance provider to settle arises when a claim has been made against the insured and there is a reasonable probability of recovery in excess of policy limits and a reasonable probability of a finding of liability against the insured. Since Illinois law generally does not require an insurance provider to initiate settlement negotiations[1] (*Adduci*, 98 Ill. App. 3d at 478; *Kavanaugh v. Interstate Fire & Casualty Co.*, 35 Ill. App. 3d 350, 356 (1975); *Oda v. Highway Insurance Co.*, 44 Ill. App. 2d 235, 253 (1963)), this duty also does not arise until a third party demands settlement within policy limits.

Having established when the duty to settle arises, we turn now to the facts of this case as alleged in plaintiff's complaint. Woodley's policy provides that defendant "may make such investigation and settlement of any claim or suit as it deems expedient." At the time of plaintiff's March 7, 1997, settlement demand for the policy limits, defendant was aware that decedent's medical bills were in excess of $80,000. This amount clearly

---

[1]There is an exception to this general rule where the probability of an adverse finding on liability is great and the amount of probable damages would greatly exceed policy limits. *Adduci*, 98 Ill. App. 3d at 478.

exceeded Woodley's $20,000 liability coverage. In addition, defendant possessed the police report, which indicated that Woodley had informed an emergency room doctor that he had been driving the vehicle at the time of the accident. Defendant was further aware that Woodley owned the vehicle. Although Woodley subsequently informed a police officer that he could not remember who was driving the vehicle at the time of the accident, we must interpret the facts in the light most favorable to plaintiff. Additionally, in automobile injury cases, proof of ownership raises a presumption that the owner of the vehicle was in control of the vehicle at the time of the accident. *Robinson v. Workman*, 9 Ill. 2d 420, 427 (1956); *Tolefree v. March*, 99 Ill. App. 3d 1011, 1014 (1981). Since Woodley was unable to recall the accident at the time of plaintiff's settlement demand, he would have been unable to rebut this presumption.

We conclude that these facts allege a reasonable probability of recovery in excess of policy limits and a reasonable probability of a finding of liability against Woodley. Plaintiff demanded settlement on March 7, 1997. Therefore, the allegations are sufficient to allege the existence of the duty to settle in good faith on that date.[2]

Finally, the trial court, without explanation, held that plaintiff could not maintain her bad-faith claim because she withdrew her demand for settlement within policy

---

[2]We conclude that defendant's duty to settle may have arisen at this time rather than as a result of decedent's attorney's initial demand for settlement. The specific date of the initial demand is unclear from the complaint and the attached exhibits. It is discernible, however, that the demand was made sometime prior to August 22, 1996. Plaintiff has not alleged facts sufficient to establish the existence of a duty to settle prior to that time. According to the record, plaintiff did not make a subsequent settlement demand until March 7, 1997. Since the insurer is not required to initiate settlement negotiations, the duty to settle could not have arisen until the demand of March 7, 1997.

limits. We disagree. Once the duty of the insurer to settle arises, the next question is whether the insurer breached that duty. Plaintiff alleged in her complaint that on March 7, 1997, she demanded that defendant settle her claim for the policy limits of $20,000 within 14 days of receipt of the demand. Defendant responded that the demand was premature and that it was still investigating to determine the driver of the vehicle. Plaintiff extended the time for settlement to April 7, 1997. Defendant failed to respond to this extension; consequently, plaintiff withdrew her offer and filed suit. Thus, plaintiff allowed defendant about one month to settle the claim and approximately 11 months to investigate the accident. Defendant did not offer to settle for the policy limits until April 1, 1998, almost one year after plaintiff withdrew her settlement demand. We conclude that these facts, along with others alleged in the complaint, are sufficient to allege a breach of the duty to settle in good faith.

Whether defendant did, in fact, act in bad faith by failing to settle plaintiff's claim within her unilaterally imposed deadline, is, of course, a question for the finder of fact. We express no view with respect to defendant's actions. Our decision today affirms the appellate court's holding, but rejects its blanket conclusion that the duty to settle arises from the "conception of the insurance contract." We conclude that an insurance provider's duty to settle arises once a third-party claimant has made a demand for settlement of a claim within policy limits and, at the time of the demand, there is a reasonable probability of recovery in excess of policy limits and a reasonable probability of a finding of liability against its insured. For these reasons we affirm the judgment of the appellate court, which reversed the judgment of the circuit court and remanded the cause for further proceedings.

*Appellate court judgment affirmed.*