In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1297

IOWA PHYSICIANS' CLINIC MEDICAL FOUNDATION,
doing business as IOWA HEALTH PHYSICIANS,

*Plaintiff -Appellant,*

*v.*

PHYSICIANS INSURANCE COMPANY OF WISCONSIN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07 C 4012—**John A. Gorman**, *Magistrate Judge.*

ARGUED SEPTEMBER 15, 2008—DECIDED OCTOBER 31, 2008

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* The plaintiff in this case, the Iowa Physicians' Clinic Medical Foundation, which does business under the name Iowa Health Physicians (IHP), asks us to predict that the Illinois Supreme Court, if confronted with the issue, would hold that the tort of bad faith in refusing to settle a claim at or within the policy limits

of a medical malpractice insurance policy extends to a noninsured under the policy. Because we think it is doubtful that the Illinois high court would go that far, we reject IHP's appeal and affirm the district court judgment dismissing its complaint.

Because this case was decided on a motion for judgment on the pleadings, we accept the allegations in the complaint as true and draw all reasonable inferences in favor of IHP. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Here, then, are the facts. IHP runs a medical clinic in Geneseo, Illinois, where Dr. Randall Mullin works as a family doctor. While working at the clinic, Dr. Mullin treated Dennis Goetz, who needed antimalarial therapy in anticipation of his trip to Africa. Tragically, Dr. Mullin's treatment was ineffective and Mr. Goetz contracted malaria during his trip. To make matters worse, Dr. Mullin failed to timely diagnose Mr. Goetz's condition upon his return. Mr. Goetz eventually died, and his wife filed suit against Dr. Mullin for his negligent care and against IHP on a theory of vicarious liability.

Dr. Mullin was protected by a medical malpractice insurance policy issued by the Physicians Insurance Company of Wisconsin (PIC), which covered his liability up to $1 million and provided for the defense of claims made against him. The policy gave PIC control over Dr. Mullin's defense, which meant that Dr. Mullin could only settle a claim if PIC consented in writing. IHP, who was listed as the policyholder on this insurance contract, paid the premiums on behalf of Dr. Mullin as

part of the package used to entice him into working at their clinic. But throughout the policy it was reiterated that coverage did not extend to IHP. Policyholders could purchase insurance from PIC, but IHP declined to do so. Instead, it was covered by a combination of self-insurance and a separate commercial insurance policy. Accordingly, IHP hired its own attorney to represent it in the *Goetz* case.

From the beginning, the case did not look good for IHP or Dr. Mullin. Many experts agreed that Dr. Mullin provided substandard care to Mr. Goetz, and the damages in the wrongful death suit threatened to be large. The economic damage to Mr. Goetz's widow and son alone was estimated at over half a million dollars. What's more, Mr. Goetz suffered severe pain before passing away. Both IHP and Dr. Mullin urged PIC to settle the case. The plaintiff offered to settle the case for $900,000—just below the policy limit—at least twice. But on both occasions PIC simply ignored the demand. Shortly thereafter, even the defense's expert witness admitted in his deposition that Dr. Mullin's treatment deviated from the standard of care. This concession led to Mrs. Goetz withdrawing her $900,000 offer and demanding $1.5 million instead. PIC eventually countered with a $200,000 offer, which Mrs. Goetz didn't deign worthy of a response, and the case proceeded to trial. The jury found Dr. Mullin and IHP liable and awarded $3.5 million in damages. PIC paid $1 million, the limit on Dr. Mullin's policy, and IHP, upon agreement with Dr. Mullin, paid the rest.

IHP and Dr. Mullin then joined forces and sued PIC in the Illinois courts. They claimed that PIC breached a duty owed to both of them to settle the claim in good faith. PIC removed the case to federal court, resting on diversity jurisdiction. Once before the federal court, PIC filed a motion for judgment on the pleadings as to both IHP and Dr. Mullin. PIC first argued that the duty to settle in good faith extends only to Dr, Mullin, who was insured under the malpractice policy, not IHP, who was excluded from coverage. PIC went on to argue that since IHP paid the judgment in excess of the policy limit, Dr. Mullin suffered no damages, dooming his claim as well. The judge (Magistrate Judge John A. Gorman sitting by consent) agreed that PIC had no duty to IHP but held that since Dr. Mullin sought damages for injury to his reputation and for emotional distress his claim could proceed. IHP asked the judge to reconsider his decision or, in the alternative, enter a final judgment as to IHP so that it could immediately appeal the decision. FED. R. CIV. P. 54(b). The motion for reconsideration was denied, but seeing no reason to delay IHP's appeal, the judge directed entry of a final judgment as to IHP. IHP now appeals. Dr. Mullin's claim against PIC remains pending in the district court.

An insurer's duty to settle in good faith on behalf of its insured, which is well-settled in Illinois, *Haddick v. Valor Ins.*, 763 N.E.2d 299, 303 (Ill. 2001); *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996), arises from the covenant of good faith and fair dealing implied in an insurance contract. This duty is a narrow exception to the Illinois courts' otherwise steadfast refusal to recognize

an independent tort arising from the breach of this contractual covenant. *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1130-31 (Ill. 2001). The paradigmatic duty-to-settle case involves three parties: the injured third party; the insured, who is being sued; and the insurer, who controls the insured's defense. If the third party sues the insured for an amount above the policy limit and seeks a settlement at the upper limit of the policy, a conflict of interests arises. In this situation, the insurer may be tempted to decline the settlement offer, no matter how good the deal is for the insured, and go to trial. It makes no difference to the insurer's bottom line whether the case is settled or the jury awards astronomical damages; in either event it will pay out only the maximum on the policy. And if the case goes to trial, at least there's a shot that they will win and pay nothing. The insured, on the other hand, calculates the risks of trial differently because he will be stuck paying anything above the policy limit. *Cramer*, 675 N.E.2d at 903. To combat the temptation to ignore an insured's interest and to make sure that the intent behind the insurance contract is upheld, Illinois courts have recognized that an insurer has a "duty to act in good faith in responding to settlement offers," and if that duty is breached the insurer is on the hook for the entire judgment, regardless of the policy limit. *Id*.

This case, however, presents a permutation of the paradigmatic duty-to-settle case. It involves four parties: the injured third party, the insured, the insurer, and the policyholder. IHP, the policyholder, obtained medical malpractice insurance from PIC on

behalf of Dr. Mullin. As the policyholder, IHP paid the premiums, but only Dr. Mullin was insured under the policy. After her husband died, Mrs. Goetz sued both IHP and Dr. Mullin. PIC refused to settle the case, resulting in a judgment $2.5 million above the policy limit. On the short record before us today, there is a pretty good case to be made that PIC's refusal to settle breached its duty to Dr. Mullin. But that's not the issue raised by this appeal. Instead, we must determine whether PIC owed IHP, the noninsured policyholder, a duty to settle in good faith. The Illinois courts have yet to decide this question, so we must predict whether the Illinois high court would stretch the duty to settle to cover the case before us. *Zenith Ins. Co. v. Employers Ins. of Wausau*, 141 F.3d 300, 304 (7th Cir. 1998). IHP would have the burden to convince the Illinois Supreme Court that the duty to settle should be expanded and consequently carries the burden before us, as we stand in the state court's stead. *Voyles*, 751 N.E.2d at 1132.

Arguing for this expansion, IHP emphasizes its contractual relationship with PIC as a policyholder and customer. This emphasis, though, is misplaced. The duty to settle is designed to protect the bargain embodied in an insurance contract, not simply honor the relationship between contracting parties in general. *Cramer*, 675 N.E.2d at 903. If a contractual relationship was all that was needed, the covenant of good faith would be elevated to a general tort duty, and the Illinois Supreme Court has repeatedly refused to go that far. *See Voyles,* 751 N.E.2d at 1130-31; *Cramer*, 675 N.E.2d at 903; *7-Eleven, Inc. v. Dar*, 757 N.E.2d 515, 523 (Ill. App. Ct. 2001). After all, the

contractual covenant of good-faith and fair dealing, the foundation of the duty to settle, is "used only as a construction aid in determining the intent of contracting parties." *Cramer, 675 N.E.2d at 903*; *see also Voyles*, 751 N.E.2d at 1131. Here, the intent of the parties is clear—IHP was to be excluded from coverage. IHP could have paid the higher premiums to receive coverage from PIC but chose not to. The duty to settle is meant to protect the bargained-for insurance coverage, not extend it. An insurer who acts in bad faith may end up paying above the contracted policy limits but only when doing so protects the insured's legitimate expectation of coverage under the policy. We doubt that the Illinois high court would extend the duty to settle to give IHP more than it bargained for.

What's more, the duty to settle is predicated on the "insurer's exclusive control over settlement negotiations and defense of litigation." *Haddick*, 763 N.E.2d at 303. Without this control, no conflict of interest arises because the policyholder can protect itself during settlement negotiations. *Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1179 (7th Cir. 1994) (noting that in Illinois the duty to settle is "an implied correlative" of insurer's control over the defense). While PIC did control Dr. Mullin's defense, it had no equivalent power over IHP. IHP had its own lawyer representing its interests and had an unfettered ability to settle. Dr. Mullin may have been the focus of the wrongful-death suit, and, as IHP points out, a settlement with Dr. Mullin could have extinguished IHP's liability as well, *American Nat'l Bank and Trust Co. v. Columbus-Cuneo-Cabrini Med. Center*,

609 N.E.2d 285, 289 (Ill. 1992) ("[A]ny settlement between the agent and the plaintiff must also extinguish the principal's vicarious liability), but that didn't take the litigation out of IHP's hands. IHP was a codefendant in the case, and it could have gotten itself off the hook for a big jury verdict if it settled the case with Mrs. Goetz.

IHP contends that expecting it to ante up anything for a settlement would be unfair, given the Illinois Supreme Court's recognition that a principal who is vicariously liable for its agent's negligence is "blameless." *American Nat'l Bank and Trust Co.*, 609 N.E.2d at 289 (recognizing right to contribution and implied indemnification for vicariously liable principals against agents). But blame is not the same as liability. IHP, as the employer of Dr. Mullin, owed Mrs. Goetz a legal duty, the breach of which gave rise to its liability in this case. We see no reason why IHP could be expected to pay a judgment but not a settlement. If IHP is bristling because it's on the hook for wrongs it didn't commit, then its complaint is really against Dr. Mullin, not PIC, and it could, depending on the exact nature of their relationship, possibly pursue contribution or indemnification from Dr. Mullin to mitigate its injury. *See Faier v. Ambrose & Cushing, P.C.*, 609 N.E.2d 315-16 (Ill. 1993); *American Nat'l Bank and Trust Co.*, 609 N.E.2d at 290; 740 ILL. COMP. STAT. 100/2. IHP may have preferred that PIC settle the case, thereby avoiding the risks involved with chasing down Dr. Mullin's share of the common liability, but the point is that IHP could have settled too. IHP weighed its options and chose to proceed to a jury trial. It is unlikely

that the Illinois high court would stretch the duty to settle to compensate IHP for this bet that went bad.

Accordingly, we AFFIRM the judgment of the district court.