2022 IL App (1st) 201032
No. 1-20-1032
Order filed September 26, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| KATHRYN TSICHLIS, | ) ) Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) |
| v. | ) ) No. 19 CH 6077 |
| | ) |
| COUNTRY LIFE INSURANCE COMPANY, | ) ) The Honorable |
| Defendant-Appellee. | ) ) Franklin U. Valderrama, ) Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Walker concurred in the judgment.

**ORDER**

¶ 1 *Held*: Trial court properly dismissed first count of complaint seeking declaratory judgment as to life insurance proceeds because doctrine of *res judicata* applied, but insurance policy required refund of premiums paid. Second count of the complaint alleging bad faith under the Illinois Insurance Code as to premium refund not barred because ongoing breach of the contract terms. Cause remanded to the trial court.

¶ 2 Kathryn Tsichlis sought a declaratory judgment against Country Life Insurance Company to determine her rights as a beneficiary under a life insurance policy issued by Country Life to her husband, John, in light of her submission of due proof of death to Country Life in 2018. See

*Tsichlis v. Country Life Insurance Company*, 2018 IL App (1st) 170826. The trial court granted Country Life's section 2-619(a)(4) motion to dismiss the complaint. 735 ILCS 5/2-619(a)(4) (West 2018).

¶ 3        We affirm in part and reverse in part. Because of this court's decision in *Tsichlis v. Country Life Insurance Company*, 2018 IL App (1st) 170826, the doctrine of *res judicata* applied to bar recovery for the death benefits due to John's suicide within two years of the issuance of the policy. But that did not relieve Country Life from its agreement to remit in full the amount of premiums paid before John's death. Accordingly, we remand for proceedings under the Illinois Insurance Code (215 ILCS 5/155 (West 2018)), regarding refund of the paid premiums with interest and attorney's fees.

¶ 4                                          Background

¶ 5        We relate the pertinent facts, including those relevant from an earlier appeal, *Tsichlis v. Country Life Insurance Company*, 2018 IL App (1st) 170826 (*Tsichlis I).*

¶ 6        John Tsichlis purchased a $700,000 life insurance policy from Country Life, issued August 6, 2010. Bill Asimakopoulos, a close family friend, sold John the policy. Under the policy, suicide within two years of the date of the policy barred payment of the $700,000 death benefit. In addition, the policy provided that Country Life must either pay the entire benefits or refund the paid premiums should an exclusion as suicide apply.

¶ 7        In December 2011, John disappeared. The police, the family, and a private investigator searched for John without success. Two months later, in February 2012, John's body was found in the woods near the Tsichlis home. The medical examiner determined that he died from a self-inflicted gunshot wound to the head.

¶ 8    On February 14, Asimakopoulos's supervisor called Country Life and spoke to a phone representative, who filled out a "death claim notification worksheet." Based on that call, the paperwork stated that Tsichlis had committed suicide and passed along to senior claims examiner Barbara Dirks. On February 21, Dirks wrote Asimakopoulos that Country Life had been informed of John's suicide. She asked Asimakopoulos to arrange for Tsichlis to provide a death certificate and fill out some forms so that Country Life could refund the premiums.

¶ 9    In March 2012, Dirks sent a letter to Tsichlis asking for a copy of John's death certificate so Country Life could process the claim. Tsichlis never responded. Nor did she respond to similar letters sent to her monthly for over a year. Although Tsichlis admitted that she had a copy of the death certificate, she neither provided it nor responded to Country Life's numerous requests.

¶ 10    Eventually, in May 2013, Tsichlis sued Country Life, alleging breach of contract, negligence, and bad faith. Country Life filed a counterclaim for declaratory judgment, arguing that Tsichlis had not provided the necessary information to pay benefits, and, in any event, John had committed suicide within two years of issuance, thereby limiting Tsichlis to a refund of the paid premiums. Country Life attached a copy of John's death certificate, listing John's cause of death as "gunshot wound to the head" and manner of death as "suicide." Country Life answered the complaint, including the affirmative defense that John committed suicide.

¶ 11    After trial, the trial court rejected Country Life's contention that Tsichlis did not provide "due proof," finding that the policy did not require her to give any particular documentation. And, in any event, no evidence established her failure to provide the documentation prejudiced Country Life. *Tsichlis v. Country Life Insurance Company*, 2018 IL App (1st) 170826, ¶ 27. Additionally, the trial court found that Country Life had not proven suicide by clear and convincing evidence and entered judgment in favor of Tsichlis for $700,000 plus prejudgment interest. *Id*.

¶ 12    On direct appeal, this Court reversed outright due to John's suicide within the two-year contestability term. *Id*. ¶¶ 36-38. Shortly after our decision, Tsichlis provided Country Life with a redacted copy of Tsichlis' death certificate, redacted autopsy results, and a completed W-9 tax form. Country Life denied the claim. In May 2019, Tsichlis again sued, seeking a declaration of her rights to the entire $700,000.

¶ 13    Tsichlis alleged that she provided Country Life with paperwork on September 27, 2018. Still, Country Life's attorneys declined to process the claim or make any payments while acknowledging receipt of the W-9, death certificate, and autopsy report.

¶ 14    The policy provided:

> "We agree to pay the Face Amount to the Beneficiary when we receive due proof that the Insured's death occurred while this policy was in full force. This payment and any other policy benefit is subject to the terms of this policy which are contained on this and the following pages."

¶ 15    Tsichlis sought Declaratory Judgment. In the first count, Tsichlis sought $700,000 plus interest, contending that the trial court's January 4, 2017 order established Country Life did not prove that the "suicide exclusion" was a proper basis to deny plaintiff's claim for the full limits of the policy. She also alleged that this Court's 2018 opinion required her to first tender "due proof" that Tsichlis had died as a condition precedent. Finally, she alleged that she complied with the "procedural" requirement of "due proof" by providing Country Life with a copy of the redacted death certificate and autopsy results.

¶ 16    The second count alleged bad faith. Tsichlis asserted Country Life's conduct in responding to her 2018 claim constituted unreasonable and vexatious conduct under section 155 of the Illinois Insurance Code. 215 ILCS 5/155 (West 2018). She alleged that Country Life refused to pay her

claim without a *bona fide* dispute as to coverage and that it failed to make a reasonable attempt to resolve the claim once liability had become apparent. Finally, she alleged that she had obtained a ruling that no basis existed to deny or limit the claim based on the policy's suicide exclusion, and had submitted "due proof" of death in 2018 "as directed by the Appellate Court," but that Country Life still denied her claim. She alleged the redacted autopsy and reacted death certificate established "Mr. Tsichlis is dead."

¶ 17    Country Life moved to dismiss under section 2-619(a)(4) of the Code of Civil Procedure based on the doctrine of *res judicata*. 735 ILCS 5/2-619(a)(4) (West 2006. At the hearing, Country Life's counsel argued: "[Tsichlis] had no motivation to help Country Life process a claim that would result in her receiving only the paid premium. That's the problem. If she had given us an unredacted death certificate, we tender the return of the premium."

¶ 18    The trial court granted Country Life's dismissal motion, concluding: (i) a court of competent jurisdiction had rendered a final judgment on the merits; (ii) an identity of causes of action arose from the "same operative facts" (John's death and the circumstances surrounding his death); and (iii) an identity of parties existed, which was undisputed. The trial court did not address Country Life's section 2-615 motion or the sur-response and sur-reply.

¶ 19                                   Analysis

¶ 20                             Standard of Review

¶ 21    The standard of review from dismissal under section 2-619(a)(4) is *de novo*. *Morris B. Chapman & Associates v. Kitzman*, 193 Ill. 2d 560, 565 (2000).

¶ 22                             Motion to Dismiss

¶ 23    Under section 2-619, we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Snyder v. Heidelberger*,

2011 IL 111052, ¶ 8. Section 2-619(a)(4) permits involuntary dismissal where other affirmative matters bar the claim by defeating or avoiding its legal effect, including the doctrine of *res judicata*. 735 ILCS 5/2-619(a)(4) (West 2018); *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 558 (2005). The doctrine has three requirements: (i) a final judgment on the merits rendered by a court of competent jurisdiction; (ii) an identity of causes of action; and (iii) an identity of parties or their privies. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). The bar to a later lawsuit "extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit." *Id.* On appeal, we determine whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent an issue of fact, whether dismissal is proper as a matter of law. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55.

¶ 24    Tsichlis's premise appears in the first sentence of her opening brief: "The only issue the Illinois Appellate Court determined with respect to Plaintiff's prior 2012 Claim *** was that it was premature because a condition precedent had not been met specifically, that Mrs. Tsichlis had not provided 'due proof' of death." This theme repeats throughout her briefs. Yet, in light of *Tsichlis I,* her interpretation is fiction. The 2013 and 2019 complaints present causes of action arising from the same operative facts––John's death, his life insurance policy's suicide exclusion, his death certificate, and Country Life's denial of benefits. Moreover, our decision in *Tsichlis I* nowhere indicates that the lawsuit was "premature." Tsichlis's non-cooperation in the first lawsuit ultimately resulted in an outright reversal.

¶ 25                         Life Insurance Policy Proceeds

¶ 26        Tsichlis argues the 2019 lawsuit was a "separate and independent claim" and not barred by a prior judgment or the doctrine of *res judicata*. Country Life maintains the trial court properly

dismissed Tsichlis's 2019 lawsuit arguing that *Tsichlis I* reversed the trial court's finding that plaintiff had provided "due proof" of death as required by the policy. *Id.*, ¶ 38.

¶ 27    We agree with Country Life. *Tsichlis I* did not pertain to procedural or technical defects. 2018 IL App (1st) 170826, ¶¶ 3, 31-38. As we stated, "The policy contains explicit language limiting the benefit if the insured committed suicide within two years of issue. We must consider the suicide clause equally relevant when considering whether due proof has been given. *Country Mutual Insurance v. Livorsi Marine*, Inc., 222 Ill. 2d 303, 311 (2006) ("insurance policy must be construed as whole, giving effect to every provision")." *Id.* ¶ 36.

¶ 28    Illinois applies the "transactional test" to determine whether two suits assert the same cause of action. *River Park, Inc.,* 184 Ill. 2d at 311. Under this test, different theories of relief constitute a single cause of action if a single group of operative facts gives rise to the assertion of relief. *Don Scaffolds Enterprises v. Concept I, Inc.,* 316 Ill. App. 3d 993, 996 (2000). To determine whether the separate claims arise from a single set of operative facts, we weigh "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *First Midwest Bank v. Cobo*, 2018 IL 123038, ¶ 19 (quoting Restatement (Second) of Judgments § 24, at 196 (1982)). When the doctrine applies, it bars all matters to sustain or defeat a claim in the first action and all that could have been offered. *Ross Advertising, Inc. v. Heartland Bank & Trust Co.*, 2012 IL App (3d) 110200, ¶ 30.

¶ 29    Thus, even if Tsichlis had a different theory or sought other relief, *res judicata* applies. See *Singer v. Brookman,* 217 Ill. App.3d 870, 877 (1991) ("Plaintiffs' actions are really just a different means to the same end and are identical for purposes of *res judicata.*").

¶ 30    The two complaints propound causes of action arising from the same operative facts. Despite the attempt to differentiate them, the complaints allege the same underlying injury resulting from the same occurrence. The finality of this court's holding could not have been more explicit—outright reversal without remand. Our inquiry does not end, however.

¶ 31                                    Exceptions

¶ 32    We must consider potential exceptions to the doctrine of *res judicata. In Altair Corp. v. Grand Premier Trust and Investment, Inc.*, 318 Ill. App. 3d 57 (2000), cited by Tsichlis, outlined three exceptions to the doctrine: (i) the judgment in the first action is inconsistent with the equitable implementation of a statutory scheme; (ii) the wrong suffered by the plaintiff is recurrent or ongoing; or (iii) the plaintiff clearly and convincingly shows that the policies favoring preclusion are overcome for some extraordinary reason. *Id.* at 63.

¶ 33    Tsichlis's attempt to revive the identical claim fails unless one of the exceptions applies. Tsichlis insists that *res judicata* yields a "harsh result," and advances all three exceptions.

¶ 34                              "Condition Precedent"

¶ 35    According to Tsichlis, she fulfilled a "condition precedent" to her claim by submitting the autopsy report, relying on cases holding that *res judicata* does not bar a claim after a condition precedent has been satisfied. Tsichlis cites *Pratt v. Baker*, 79 Ill. App.2d 479 (1967), where the time for performance had not yet arrived. *Id.* at 482. *Pratt* established exceptions to the application of *res judicata* where the time for performance by the defendant has not yet arrived or where plaintiff has not performed a condition precedent to recovery. *Id. Pratt* is inapposite. The time for performance arrived with the submission of the first insurance claim in 2012 and reversal without remand in *Tsichlis I* precluded this exception from Tsichlis's attempt to revive her earlier claims in the 2018 lawsuit.

¶ 36                      "Ongoing Breach"

¶ 37        Next, Tsichlis submits that the basis of this lawsuit involves an "ongoing and reoccurring breach" because "[t]he wrong suffered by the plaintiff (non-payment of her death benefit claim) is ongoing as there has been no resolution of her claim." Relying on *D'Last Corp. v. Ugent*, 288 Ill. App. 3d 216, 224 (1997), Tsichlis argues that "claims for continuing conduct complained of in the second lawsuit that occur after judgment has been entered in the first lawsuit" are not barred.

¶ 38        We first address Country Life's argument that Tsichlis forfeited the issue of an ongoing breach of the contract by neglecting to raise it before the trial court until the motion for reconsideration. The record refutes Country Life's contention. The issues raised on appeal figure in the complaint, where Tsichlis alleges Country Life "continue[d] to deny [Tsichlis's] claim for benefits under the policy" and "the denial is ongoing." Tsichslis urged these points in opposing Country Life's motion to dismiss and included them in the motion for reconsideration. While the trial court did not consider the argument, the trial court's inaction does not amount to forfeiture.

¶ 39        Turning to the issue, we find *D'Last* inapplicable. The statute then permitted a single refiling of a voluntarily dismissed action, notwithstanding that a federal complaint contained federal claims not pled in the state action. In *D'Last,* the plaintiff voluntarily dismissed the original state lawsuit, and the court held a later federal complaint constituted a "refiling" of the state action.

¶ 40        The incompatibility of the procedural postures aside*,* the case on which *D'Last* rests, *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955). There, the new action named five new defendants. The *Lawlor* court stated: "While the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."

¶ 41    Unlike in *D'Last* and *Lawlor*, when filing the earlier case, Tsichlis had available to her all necessary facts. And she cites nothing to support that the denial of life insurance proceeds in the event of suicide initiates an "ongoing" wrong.

¶ 42                              "Balance Of Equities"

¶ 43    Finally, Tsichlis seeks an exception because "there is no question that the widow is owed *some* benefit, and it would be unjust and against public policy to deny her that." Though we sympathize with this family's loss, the legal reality of the policy's terms demands otherwise. We reversed without remand after unequivocally holding Tsichlis had not fulfilled her responsibility. *Tsichlis* I, ¶ 37 ("The policy states that Country Life will pay the benefit when it 'receive[s]' the due proof. Its responsibility to investigate the claim further only starts after receiving that due proof. That Country Life obtained the death certificate after Tsichlis sued it does not obviate her responsibility under the policy before suit.") In addition, Tsichlis had been made aware that the suicide clause would prevent her from receiving the full death benefits. *Id.* ¶¶ 23, 37.

¶ 44    Tsichlis cites *Adams v. Pearson*, 411 Ill. 431 (1952), a case with "peculiar facts" in which the appellate court reversed and remanded but cautioned that "[t]his case, in which both parties would be barred by ordinary application of the rules of *res judicata* with an unsatisfactory and perhaps inequitable result, presents a unique and nonrecurrent situation." *Id.* at 442. (*Adams* is a 1952 case about a 1942 real estate transaction.)

¶ 45    Under no circumstances would Country Life be obliged to pay the full death benefit after a suicide during the two-year exclusion. Indeed, rather than submit the required paperwork, Tsichlis sued. It matters not whether this maneuver sought to sidestep the exclusion or simply a gamble to receive the full benefit.

¶ 46    The operative facts, parties, and final adjudication satisfy the requirements of *res judicata*.

¶ 47                                              Premiums Refund

¶ 48            The question remains regarding the refund of the paid premiums paid.

¶ 49            Country Life requested a copy of Tsichlis' death certificate to process the claim and refund the paid premiums—the limited benefit available under a suicide clause. Country Life asserts, "As the pleadings did not frame any issue regarding the premium, the alleged "windfall" was not properly before the trial court and not properly raised on appeal." Conversely, at oral argument, Country Life argued that Tsichlis did not properly submit her claim due to reactions, but if she had, she would be entitled to receive the premiums. Whether or not the documents submitted had redactions is irrelevant under these facts.

¶ 50            Tischlis asserts it would be fundamentally unfair to deny the life insurance proceeds as well as the premiums. We agree. The insurance contract requires a refund of premiums on denial of the death benefit. By retaining the premiums, Country Life secured a windfall.

¶ 51            At oral argument, County Life argued that Tsichlis chose how to litigate her claim and did not request the return of the premiums, but her brief belies this notion. Tsichlis argued, "The question before the Court in this lawsuit is: in light of Plaintiff's satisfaction of the condition precedent and ongoing breach, whether Country Life has an obligation to pay either a full death benefit or a limited death benefit–but there is no question that the widow is owed some benefit and it would be unjust and against public policy to deny her that." At oral argument, Tischlis responded that she sought a declaration that Country Life should refund the premiums.

¶ 52            Country Life's persistent refusal to process the claim constitutes an ongoing breach. Citing a medical malpractice case, Country Life argues that involuntary dismissal operates as an adjudication on the merits. See *DeLuna v. Treister*, 185 Ill. 2d 565, 574-79 (1999) (*res judicata* barred second lawsuit against physician after first lawsuit dismissed for failure to file affidavit of health professional to medical malpractice complaint and failure to seek leave of court to refile complaint).

But unlike medical malpractice cases, Tsichlis had an enforceable insurance contract with Country Life on refund of the premiums.

¶ 53                                                    Section 155

¶ 54        Country Life's counsel stated in the trial court that it would "process the claim" only if it had a copy of the "unredacted" death certificate. But the insurance policy obligates Country Life to refund paid premiums if it invokes the suicide clause.

¶ 55        Country Life's continuing refusal to return the premiums implicates section 155 of the Insurance Code (215 ILCS 5/155 (West 2018)). That section confers a contractual remedy against an insurer's refusal to pay a claim under a valid insurance policy "in a vexatious and unreasonable manner." *Cramer v. Insurance Exchange Agency,* 174 Ill. 2d 513, 520 (1996).

¶ 56        Under Section 155, an insured or an assignee may recover damages if (i) the insurer disputes the amount of the loss payable on a claim, delays settling a claim, or refuses to provide coverage and (ii) the insurer's action or delay was unreasonable and vexatious. See 215 ILCS 5/155 (West 2018). Count II alleges unreasonable and vexatious conduct under section 155 in regard to Country Life's response to her 2018 claim constituted. *Id*.

¶ 57        The question of bad faith is decided by the factfinder. *Haddick ex rel. Griffith v. Valor Ins.*, 198 Ill. 2d 409, 419 (2001)). The Supreme Court addressed the issue of when an insurance provider's duty to settle arises in *Haddick*, holding: "The duty does not arise at the time the parties enter into the insurance contract, nor does it depend on whether or not a lawsuit has been filed. *Id*. at 417. Rather, the duty arises "when a claim has been made against the insured and there is a reasonable probability of recovery in excess of policy limits and a reasonable probability of a finding of liability against the insured." *Id*. To survive a motion to dismiss a bad-faith claim, the plaintiff must allege facts sufficient to establish the existence of the duty to settle in good faith. *Id*.

¶ 58　　Given Country Life's recognition of the right to a refund of the premiums paid on the policy and its persistent refusal to issue a refund, the delay is potentially "vexatious and unreasonable" within the statute's meaning. There was no *bona fide* dispute as to the provision on refund of paid premiums. The claims examiner for Country Life requested the insurance agent "to arrange for [Tsichlis] to provide a death certificate and to fill out some Country Life forms so that Country Life could refund the premiums paid on John's policy." *Tsichlis*, 2018 IL App (1st) 170826 ¶ 13. Country Life filed a counterclaim for declaratory judgment, arguing Tsichlis should receive only the limited benefit of the return of the premiums. *Id*. ¶ 16.

¶ 59　　We hold that dismissal of Count II was error and remand for further proceedings in accord with this opinion. As stated above, whether an insurer exercised bad faith presents a question for the finder of fact. See *Haddick,* 198 Ill. 2d at 419. Accordingly, we do not decide whether Country Life breached its duty of good faith when it refused to refund the premiums. Instead, we reverse the trial court's decision and remand to the trial court, holding that Tsichlis can maintain a cause of action for bad faith.

¶ 60　　Affirmed in part, reversed in part, and remanded.